## [No. 1572.]

### HILL DEERING *v.* THE STATE.

1. THEFT—FACT CASE.—See evidence held insufficient to sustain a conviction for the theft of sheep.
2. SAME.—That the taking by the defendant of the alleged stolen property was fraudulent is a constituent element of the offense of theft, and must be established by the State before a conviction can be maintained.
3. SAME—CHARGE OF THE COURT.—In a prosecution for theft the trial court charged the jury as follows: "If the jury have a reasonable doubt as to whether the defendant honestly, and in good faith, believing he had a legal right so to dispose of said sheep to Hester,    *    *    *    then they should give him the benefit of such doubt and acquit him." *Held* error, inasmuch as the effect of such charge was to divert the minds of the jury from the prime issue in this case, which was a fraudulent *taking* by the defendant.

APPEAL from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

The indictment in this case, filed June 28, 1882, charged the defendant with the theft of eighteen head of sheep, the property of Bart. Burkett. The offense was alleged to have been com-

mitted in Gonzales county, on the fifteenth day of November, 1881. The trial was had at the July term, 1883, of the District Court, and resulted in the conviction of the appellant. His penalty was affixed at confinement in the penitentiary for a term of two years.

Bart. Burkett was the first witness for the State. He testified that he lived in Gonzales county, Texas. He knew and identified Hill Deering as the prisoner at the bar. During the spring of 1881, the witness from time to time lost sheep from his pens, aggregating perhaps a hundred head. About the time mentioned in the indictment, the witness found eighteen head of his sheep in a drove in DeWitt county, about one mile from the Gonzales county line. They were then about three miles distant from the witness's house, and about seven miles distant from the defendant's house. The drove was then under the charge of John G. Hester and the defendant's brother, Tobe Deering. The defendant was not present. The sheep were being driven along the public road in the direction of Hoheim. Hester told the witness that he had purchased the sheep from the defendant. The witness stopped the sheep, which were driven into his pen, and Hester sent for the defendant. When the defendant arrived, Hester claimed, in the presence of witness, defendant and others, that he had bought the sheep from the defendant, and the defendant said that he had sold them to Hester. The sheep were worth three dollars per head. No one had the witness's consent to take the sheep.

The witness's brand was X on the side of the face, one prong of the cross extending from the left corner of the eye to the corner of the mouth, and the other extending across the bridge of the nose. This brand was on these sheep, with the addition of a small mark across one bar of the cross. This mark had been added and "haired over." The sheep were still in the witness's mark. When the defendant first came up to where the witness, Hester and Tobe Deering had the sheep, he said they were his sheep. Afterwards, and during the same conversation, he said they were honest sheep which he had sold for his little brothers. He said that they had raised some and bought some of them. The witness took his sheep from the bunch, one by one, and examined them carefully. There were present at this time the witness, J. L. Crawford, Rufus Hale, Willis Arrington, John Hester and the defendant. Subsequently and in the presence of the parties named, the defendant and the witness entered into

the following agreement: The witness was to allow Hester to go on with the sheep, and the defendant was to bring a suit against the witness for the sheep, and Willis Arrington was to become surety for the forthcoming of the sheep. Hester was to hold the sheep as the property of the witness until their status was decided by law. The defendant never brought the suit agreed upon.

Some time after the agreement was entered into, the witness found his sheep in the flock of Lee Floyd, on the west side of the Guadalupe river. He and Floyd tested ownership by arbitration, and the sheep were awarded to the witness, whereupon Floyd paid the witness for them. This arbitration was had in Gonzales county, in March, 1882. The witness had never seen his brand on other sheep than he owned, except those he sold, which were put in the mark of the purchasers. When the witness found these sheep in the flock in the possession of Tobe Deering and John G. Hester, the letter V had been (since they were taken) branded on the side of the face opposite the witness's brand.

Rufe Hale was the next witness for the State. He testified that some time in 1881, at the request of Burkett, he went to Burkett's house to look at eighteen head of sheep which were said to have been stolen from Burkett. When the witness saw them, the sheep were near Burkett's house, in Burkett's possession, and had Burkett's mark and brand on them. A slight addition had been made to Burkett's brand. These eighteen head of sheep were in a brand different from that on the other sheep of the flock. When the defendant came up to the party, he said that he had sold those sheep to John G. Hester. He claimed that the sheep had been raised by his family. Respecting the conversation between Burkett and the defendant, the witness testified substantially as Burkett did. He corroborated Burkett as to the arrangement for the proposed litigation over the ownership of the animals.

J. L. Crawford testified, for the State, that he was present when Burkett separated eighteen head of sheep from a flock of sixty or seventy, and saw Burkett examine them one by one. Seventeen of them had Burkett's brand, with a slight addition, on them. They were also branded with a V on the opposite jaw. This V and the addition to Burkett's brand were fresher than the original brand. Two of the sheep Burkett recognized from the outside of the pen, and independent of the marks and

brands,—one by a peculiarly broken horn, and the other by a distinct and different brand. The defendant said that these eighteen sheep were, or had been, his and his little brother's, but that he had sold them to John Hester. Burkett returned the sheep to Hester upon the agreement of the defendant to sue for them; and Arrington became surety to Burkett for the sheep. The witness afterward saw some of the sheep in Floyd's flock, in Gonzales county. He had never seen any of them in the possession of the defendant.

J. L. Floyd testified, for the State, that Bart. Burkett came to his house early in the spring of 1882 and examined his, witness's, flock of sheep, from which he picked out eighteen head which he claimed as his own. The question of ownership was arbitrated by the witness and Burkett, and, the award being in Burkett's favor, the witness paid him for them. C. J. O'Neil, the witness's partner, brought the sheep to the witness's place, and had a bill of sale for them from John G. Hester. This was the first time the witness ever saw them. The brands and marks showed then that they were original marks and brands changed. The brand showed that it had recently been changed from the brand claimed by Burkett. The letter V was also branded on the cheek opposite the changed brands, and was fresher than the former. One of the eighteen head identified by Burkett had a broken horn, and another the letter B branded on one jaw

J. A. Deering, for the defense, testified that the defendant was his son, and that if the defendant ever owned any sheep, he, the witness, did not know it. The witness's family had owned a small flock of sheep since 1875, which was started from a pet lamb presented to some one of them by Captain Gus. Jones. Two or three other sheep were afterward obtained from Sam. Moore, and as many from Dave Williamson. In 1880 the witness's family exchanged a buck and some mutton with George Johnson for six ewes, and in the fall of the same year got five or six more from George Johnson. The witness's children sold a flock of about sixty head of sheep to John Hester, and he, Hester, and Tobe Deering drove them off. The defendant had no interest in those sheep. There were several marks among the sheep, but they were all in the same brand, which was the letter H and the figure 4 connected. That brand was of record. The witness had nothing to do with the sheep, and knew but little about them.

On his cross-examination the witness described the marks and brands on the sheep belonging to his family, but none of them corresponded with the Burkett mark and brand. These sheep, when driven from the house, were started in Gonzales county, about eight miles from where they were stopped by Burkett. Except five or six of the flock, which belonged to one Spaulding and were unbranded, they were branded in the H4 connected brand.

The defendant's brother-in-law, J. L. Johnson, testified that in 1879, 1880 and 1881, he lived with the defendant's father. The Deering family owned a small flock of sheep, in which the defendant neither had nor claimed an interest. In 1878 the witness got four or five motherless lambs from Sam. Moore, and in 1879 five or six more from Will Jones, which he gave to old Mrs. Deering. In 1881 the Deering family traded a buck to George Johnson for five or six head. "His" (Johnson's?) brand was the letter H with the cross-bar elongated, and when the Deerings got these last sheep they put all the rest in that brand. The mark was a smooth crop off each ear. The witness here corrected himself, and said that it was in 1882 they got the sheep from Johnson. The Deerings impressed the letter V on the jaw of the sheep. Old man Deering made the trade with Hester, in the presence of all of his family except the defendant.

S. S. Gary testified, for the defense, that five years ago the Deerings owned a small flock of sheep. The witness understood them to belong to Mrs. Deering and the little children, and that the defendant had no interest in them.

Leon Kendall testified, for the defense, that he had seen a few sheep running around the Deering place, which he understood to belong to the old lady and the boys.

A. H. Jones testified that the young Deering children claimed some sheep, but he had never known the defendant to claim any. They got a few lambs from the witness's father in 1874, and traded a buck to George Johnson for five or six ewes.

The motion for new trial, which included the questions involved in the opinion, was overruled.

*Fly & Davidson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE.    Bart. Burkett lived in Gonzales county; and

in the spring of 1881 lost about one hundred head of sheep. On or about the fifteenth day of November, same year, John J. Hester and Tobe Deering were found in the possession of eighteen head of Burkett's sheep, Hester stating that he had purchased them from defendant, Hill Deering, who was not present. Burkett stopped the sheep, putting them in his pen, and Hester sent for defendant. When the defendant arrived he stated that he had sold the sheep to Hester. When the defendant first arrived he said the sheep were his, but afterwards said in same conversation that they were honest property, and that he had sold them for his little brothers. An agreement was made, the terms of which were that Burkett was to "let Hester go on with the sheep, and defendant was to bring suit against Burkett for them, Willis Arrington standing security to Burkett for the same." Defendant did not sue Burkett. Hester sold the sheep to Lee Floyd, and Floyd and Burkett arbitrated the matter, Burkett gaining the sheep, and Floyd paid him for them.

Viewing this evidence in its strongest light against defendant, what does it prove? First. That defendant sold the sheep to Hester, as his own property, or as the property of his little brother. Second. That he agreed to bring suit against Burkett for the sheep, but failed to do so. A most thorough scrutiny of all the evidence in the record will not show at any time defendant in possession of these sheep. On the other hand when we take in consideration the testimony for the defense, without conflict on material points, the confession of defendant "that he sold the sheep to Hester" will be reconciled with his perfect innocence.

Be this as it may, theft is the fraudulent taking of property, etc. The taking by defendant must be proved by the State such taking as would constitute him a principal. Does the fact that he sold the sheep, some six months after they were taken, to Hester, constitute proof of such taking? It may be urged by the State that there is other evidence tending to prove the taking. What is it? The altering the brands and marks? Who altered the marks and brands? Did the defendant? There is not only no evidence to support this theory, but, on the contrary, the evidence of the witnesses who speak to this point, or facts bearing upon this point, most clearly negatives such theory. (The Reporter will give the evidence in full.) But, suppose the

brands and marks to have been altered by defendant, will this alone support the charge of theft? We think not; for, if so, defendant could be convicted of two felonies upon precisely the same proof. We are of the opinion that the evidence does not support the verdict.

The seventh paragraph of the charge is, we think, justly complained of by the defendant. This is the objectionable part of that paragraph: "If the jury have a reasonable doubt as to whether the defendant honestly and in good faith, believing he had a legal right so to dispose of said sheep to Hester, *   *   * then they should give him the benefit of such doubt and acquit him." But suppose the jury should believe from the evidence that defendant did not honestly and in good faith believe that he had the *legal* right so to dispose of the sheep, then and in that event what should they do? Convict, of course. The palpable error in this charge consists in leading the minds of the jurors from the issue made and tendered by the indictment, to wit: did defendant *fraudulently take* the sheep from the possession of Burkett? This was the issue, and the only issue which could be determined by the jury under the indictment. Other inferior issues may be determined in order to a decision of this main issue, but for no other purpose. From this charge the jury would be justified in concluding that it was the offense of theft to sell the sheep of Burkett to Hester, unless in good faith the defendant believed that he had the legal right to do so; and defendant's honesty in his belief in regard to his legal right to sell is made the issue by this part of the charge. This, as we have said, is error—the issue being that defendant fraudulently took the sheep. This was affirmed by the State and denied by the defendant. This must be proved by the State, to sustain a conviction on this indictment. For no subsequent felonious or fraudulent connection with the sheep, whatever it may be, will justify a conviction for theft. Possession of property recently after the theft, unexplained, is used for the purpose of proving that the party so in possession was the *fraudulent taker*. A party being so in possession is not punished for being in possession; but from this possession it may be presumed that he was the party who fraudulently took the property. We are not passing upon the weight to be given to recent possession of stolen property, but the purpose for which it can be used.

For the error in the charge, and because the verdict is not

supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 24, 1883.